HODGES et al., Appellants, v. SNYDER et al., Respondents.

(178 N. W. 575.)

(File No. 4630.    Opinion filed June 24, 1920.)

1. Appeals—Assignment of Error—Grouped Assignments, Arguments Re, Order Vacating Restraining Order, Sustaining Demurrer to Complaint, As Like Questions—Rule of Court—Separate Appeals, Effect.

Under Rule 4 of Supreme Court, providing in part that each assignment of error, or group of assignments, if they present a

like question, should be followed by the argument and authorities relied on to sustain the alleged claim of error, held, that, although the appeal was from an order vacating a temporary restraining order, and from one sustaining demurrer to complaint, each order being assigned as error, yet, since the setting aside of restraining order followed as matter of course upon the order sustaining demurrer, the substance of both orders could have been incorporated in one; and the assignments should be treated as a group of assignments presenting like questions, within the rule.

2.  Actions—School Districts, Consolidation Of, Right to Organize, Involving Bond Election, Whether Injunction or Quo Warranto the Remedy—Resident Taxpayers, Whether Proper Plaintiffs in Injunction.

     A suit in equity, by resident taxpayers in the proposed conconliated school district, are proper parties plaintiff, and such suit is the proper remedy, and not quo warranto, where the litigation questions right to organize a consolidated district out of the territory involved, and not merely an attack on the regularity of the proceedings and an election leading up to the organization (claimed by defendant acting officers of the purported district to be merely a collateral attack thereon.)     So held, where the relief sought involved also enjoining issuance of purported consolidated school bonds voted pursuant to the alleged organization.

3.  Schools—Consolidated District, Whether Statutes Embrace Independent Districts—Emergency Clause, Whether Operative Re Amendatory Statute—Former Decision Followed.

     Following Isaacson v. Parker, 42 S. D. 562, 176 N. W. 653, and same case on rehearing, 178 N. W. 139, held, that an independent school district may not be consolidated with other districts, since the Code Commission in framing Sec. 7569, Rev. Code 1919, eliminated from Laws 1913, Ch. 194, the words "school districts of any kind" and inserted in lieu thereof the words "two or more common school districts;" nor is said Code provision affected by Laws 1919, Ch. 170, purporting to authorize "two or more school districts of any kind to consolidate;" the emergency clause in said Act being ineffectual, wherein it declares the act necessary for immediate support of state government and its existing institutions, since it does not come within the exception to the referendum clause in Art. 3, Sec. 1, Const., relating to laws concerning public peace, health, or safety, and support of state government, etc.   Following State v. Whisman, 36 S. D. 260.

4.  Constitutional Law—Legislative Power, Under Referendum Clause—Peoples' Right Re Wisdom, Expediency, of Enactment, Limitation Of By "Public Peace" and "Support of Govern-

ment" Exception—When Statute Effective—Statutes, Code, Constitution, Construed.

Prior to amendment of Sec. 1, Art. 3, Const., all legislative power of state, was vested in Legislature, subject to Governor's veto. Under Sec. 22, Art. 3, no legislative act took effect until 90 days after adjournment of session at which it was passed, except in case of emergency to be declared by two-thirds vote of all members of each house, whereupon it took effect immediately on its passage and approval, such declaration being conclusive. Under the amendment of Sec. 1 in 1898, vesting legislative power in Legislature, except that people reserve to themselves the right to require that any laws enacted by Legislature shall be submitted to referendum before going into effect, "except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions," the people reserved to themselves right to pass on wisdom or expediency of any legislative enactment, unless such law falls within one of the two classes excepted by said referendum amendment, provided, that any law will go into effect in accordance with provisions of Sec. 5111, Rev. Code 1919, (providing that, subject to provisions of Constitution and statutes relating to vetoes and the referendum, a legislative act not prescribing when it shall take effect, if passed at regular session, is effective July 1st following, and if passed at special session, is effective on 91st day after final adjournment of such session) unless prior to that time a referendum petition, as provided by Sec. 5069, Rev. Code 1919, has been filed. Under said amended Sec. 1, two classes of laws are not subject to referendum: (1), such as are declared by the act itself to be necessary for immediate preservation of public health, etc.; and (2) such as are necessary for support of government and its existing public institutions. A law may be necessary as coming within the first class, and still be subject to referendum unless Legislature declares it necessary for immediate preservation of the public peace, etc.; and will go into effect as per provisions of said Sec. 5111, but meanwhile will not be subject to referendum; but if declared necessary for immediate preservation of public peace, etc., and there is attached thereto an emergency clause as provided for in Sec. 22, Art. 3, (in effect postponing effect of a statute for ninety days after adjournment of session, unless in case of emergency, to be expressed, etc., Legislature shall by two-thirds vote of all members elect "otherwise direct," in which case such law will be effective immediately, or at such time as Legislature may fix; and the operation of such laws can not be suspended nor postponed by filing of referendum petition.

5.  Constitutional Law—Law Preservative of Public Peace, Support

of Government, Whether Law Is, Question for Courts—Whether Emergency, Immediate Necessity, Question for Legislature.

Whether a law is in substance and effect, one for preservation of public peace, etc., or for support of state government and its existing institutions, is question of law for courts to decide, subject to rule that in case of doubt legislative will should be given effect; and whether an emergency exists making it necessary that a law belonging to either of these classes should take effect immediately, is question for Legislature, to be conclusively evidenced by declaration of emergency under Art. 3, Sec. 22, Const., as is also the question whether necessity is immediate, where law is for preservation of public peace, etc., even though emergency clause be not attached, with like conclusiveness as to declaration.

6. Same—Constitutional Referendum Clause, As Limiting Legislative Declaration of Emergency—Section 22 Modified by Referendum Clause—Decisions Adverted To.

The effect of the referendum clause of the Constitution (Art. 3, Sec. 1 as amended in 1898,) was to amend or modify Sec. 22 of said article, by implication; so that it is only such laws as are not subject to the referendum clause that can be put into immediate effect by declaration of emergency; following State v. Whisman, 36 S. D. 260, overruling State v. Bacon, 14 S. D. 394.

7. Same—Support of Government, Institutions, Emergency Clause in Statute, Whether Dependent On—School District Consolidation Law, Effect Of, As Futile Re Organization.

It could not be seriously contended that support of state government and its existing public institutions depended on Laws 1919, Ch. 170, amending Sec. 7569, Rev. Code 1919, relating to school district consolidations, and containing an emergency clause declaring it necessity for immediate support of state government, etc.; otherwise, Legislature could attach emergency clause to any law supported by two-thirds vote, thus practically annulling referendum clause in Const. For Legislature to say that support of state government and its existing institutions depended on immediate operation of said Act, is an absurdity. Held, said law did not go into effect until July 1, 1919. Held, further, that the attempt to organize the purported Consolidated School District in question was unauthorized by any law then in force, and the attempted organization was futile.

Whiting, J., dissenting.

Appeal from Circuit Court, Kingsbury County. Hon. Alva E. Taylor, Judge.

Action by J. H. Hodges, Nick Hoffman, Walter Anderson, E. E. Ackley, and H. M. Muser, on behalf of themselves and of all other electors and taxpayers similarly situated, against G. T. Snyder, C. W. Walkow, A. O. Walkow, C. J. Noyes and J. W. Earl, as members of the Board of Education of the purported consolidated school district of Erwin Independent Consolidated School District No. 1, of Kingsbury County, South Dakota, and C. A. Jepson, Clerk, and J. W. Kruger, Treasurer, of said purported school district, and M. L. McCarty, County Superintendent of School of Kingsbury County, South Dakota, to enjoin and restrain defendants from purchasing a school site, from erecting a school building, and from issuing or selling school bonds of said purported consolidated district, and for other relief. From an order vacating a mean-time restraining order and denying a pendente lite injunction, and from an order sustaining a demurrer to the complaint, Plaintiffs appeal.   Reversed.

*Hall & Purdy,* for Appellant.

*Null & Royhl,* for Respondents.

(2)   To point two of the opinion, Appellant cited: Heatherer v. Herron (S. D.), 126 N. W. 244; State v. Lien, 9 S. D. 297, 68 N. W. 748; State v. Menzie, 17 S. D. 535, 97 N. W. 745; Ewert v. Mallery, 16 S. D. 151; Crampton v. Zabriskie, 101 U. S. 601; 25 Law Ed. 1070.

Respondents cited: McQuillan Municipal Corporations Secs. 151, 25-30; State v. Crow Wing County, 66 Minn. 519, 35 L. R. A. 745, 69 N. W. 925; State v. Tralstead, 36 S. D. 568; Pomeroy's Equity Jurisprudence Vol. 4, Page 4097, Section 343; State v. Olson, (Minn.) 119 N. W. 799; Nelson v. Consolidated School District 164 N. W. 874.

(3)   To point three, Appellants cited: Sec. 1, Ch. 194, Laws 1913; Secs. 66, 176, Ch. 135, Laws 1907; Secs 7440, 7569, Rev. Code 1919; Sec. 170, Laws 1919: Ch. 49, Laws 1919; Sec. 176, Ch. 135, Laws 1913 (Rev. Code 1919, Sec. 7536.)

POLLEY, J.  The defendants in this case are acting as the officers of the purported Erwin independent consolidated district No. 1 of Kingsbury county and the superintendent of schools of that county.  Plaintiffs are resident property owners and taxpayers of the territory embraced within said purported school district. Prior to the acts complained of by plaintiffs, the said territory

consisted of school districts Nos. 31, 32, 34, 35, and 50 of said county. During the months of March and April, 1919, certain proceedings were had by defendants, to the end that, on the 16th day of April, 1919, the superintendent of schools of said county made and signed an order in which he declared that school districts Nos. 31, 32, 33, 34, and 50 be, and are, consolidated into a single district to be known as Erwin independent consolidated district No. 1 of Kingsbury county. Why district No. 35 was omitted from the order does not appear. On the 8th day of April, 1919, an election was held in said purported consolidated school district, at which election a board of directors of such district was elected. Thereafter, and during the months of May and June, 1919, said board took certain proceedings with a view of issuing bonds to the amount of $97,000 for the purpose of purchasing a school site and erecting a school building thereon, in the city of Erwin. Thereafter, on the 4th day of June, 1919, an election was held in said purported district for the purpose of deciding whether said bonds should be issued. This election authorized the issuance of such bonds. Thereupon plaintiffs commenced this action, and asked to have defendants enjoined and restrained from purchasing said school site or erecting the said school building, and from in any manner interfering with the schools as they existed in the said several school districts, or issuing or selling said bonds, or any part thereof; and that all the proceedings had for the establishment of such purported consolidated school district and the issuing of said bonds be declared null and void.

At the commencement of the action the court issued an order to show cause, on a certain day specified, why a temporary injunction should not be issued, and which order contained a meantime restraining order. To plaintiffs' complaint, defendants interposed a general demurrer. The demurrer was sustained, and an order to that effect made and entered by the court. The court also at the same time made and entered a separate order vacating the meantime restraining order and denying the pendente lite injunction. From this order plaintiffs took an immediate appeal, and also appealed from the order sustaining defendants' demurrer. Both appeals are presented on the same brief.

[1] It is contended by respondents that appellants, in the

preparation of their brief, have not complied with rule No. 4 of this court (170 N. W. vii), and that for that reason their brief should not be considered. In this contention respondents are clearly wrong. The portion of the rule that is claimed appellants have violated reads as follows:

"Each assignment, or group of assignments, if they present a like question, should be followed by the argument and authorities relied upon to sustain the alleged claim of error."

While the appellants' assignments are stated in separate paragraphs and separately numbered, they all present like questions. True, the making of the order vacating the temporary restraining order is separately assigned as error, but the setting aside of that order followed as a matter of course when the demurrer to the complaint was sustained. The substance of both orders could more appropriately have been incorporated into one order, and then one assignment would have been sufficient, and but one appeal would have been necessary. The assignments should be treated as a group of assignments presenting like questions.

[2] Another question of practice is raised by respondents that must be disposed of before the merits of the case can be reached. Plaintiffs commenced the action in their own name as the real parties in interest, asking for equitable relief by injunction. Defendants contend that this is not the proper remedy, but that plaintiffs should have proceeded by an information in the nature of quo warranto. The reason, of course, as claimed by defendants, why plaintiffs should not be allowed to maintain this action is that, this being an action for equitable relief on the ground that the school district was not legally organized, it involves a collateral attack on the proceedings and the election to organize the district; and it is contended that such matter can be inquired into only in quo warranto procedings. If this action involved merely an attack on the regularity of the procedings and the election leading up to the organization of such school district, we might concede, though we do not decide, that quo warranto procedings would be the only remedy. But this action goes further back than the proceedings to organize the district or the regularity of the said election: It questions the very right to organize a consolidated or independent district out of the territory

involved, and a suit in equity in the name of the real parties in interest is the proper remedy.

The case of Brick Co. v. Grank Forks, 27 N. D. 8, 145 N. W. 725, cited and relied upon by appellants is not analogous to this case. In that case there was no question as to the legal existence of the corporation involved, nor that the defendants were the legal officers thereof. The complaint in that case was that the corporation was trying to exercise its authority beyond its territorial jurisdiction. Neither is the case of Nelson v. School District, 181 Iowa, 424, 164 N. W. 874, cited and reliecd upon by respondents, analogous to this case. That case was determined upon the theory that a de facto public corporation existed; but in this case it is claimed that there was not even a de facto corporation.

[3] It is the contention of appellants that the purported Erwin Independent consolidated school district No. 1 was not legally organized, and never existed as a corporate entity, for the reason, among other things, that chapter 194, Laws 1913, did not contemplate the inclusion of an independent school district in a consolidated district. This matter has been thoroughly considered by this court in Isaacson v. Parker, 176 N. W. 653, and again in the same case on rehearing (178 N. W. 139), where the above contention of appellants was sustained. This is the construction adopted by the Code commission, and, when they incorporated the law into the Code, they eliminated the words, "school districts of any kind," and inserted in lieu thereof the words, "two or more common school districts." Section 7569, Rev. Code 1919. But immediately after the adoption of the Code and before it went into effect, the Legislature amended this section by the enactment of chapter 170, Laws 1919, which amendment provides that "two or more school districts of any kind may consolidate" in any manner they see fit. This act, respondents contend, went into effect immediately upon its approval; that this was prior to any of the acts of consolidation complained of in this case; and therefore that consolidation was legal, under the provisions of this act, even though it might not have been authorized by the original act of 1913. It is true, chapter 170, Laws 1919, contains the following emergency clause:

"Whereas, this act is necessary for the immediate support of

the state government and its existing institutions, an emergency is hereby declared to exist and this act shall be in full force and effect from and after its passage and approval." Section 2.

But it has already been declared to be the law of this state that the attachment of an emergency clause to a legislative act does not put it into immediate effect unless it comes within the exception named in section 1, art. 3, of the Constitution. State v. Whisman, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1.

[4] Prior to the amendment of section 1, article 3, of the Constitution, all legislative power of the state, subject to the veto of the Governor, was vested in the Legislature. Under the provisions of section 22 of article 3, no act of the Legislature could take effect until 90 days after the adjournment of the session at which such act was passed, except in case of an emergency to be declared by a two-thirds vote of all the members of each house, when and in that case such act took effect immediately upon its passage and approval, and such declaration by the Legislature was conclusive upon that question. At the general election of 1898, section 1 of article 3 was amended to read as follows:

"The legislative power of the state shall be vested in the Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves * * * the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, [and the] support of the state government and its existing public institutions. * * *"

By the adoption of this amendment, the people reserved to themselves the right to pass upon the wisdom or expediency of any law enacted by the Legislature, unless such law falls within one of the two classes excepted by the amendment, provided that any law will go into effect in accordance with the provisions of section 5111, Code 1919 unless prior to that time a referendum petition, as provided by section 5069, Revised Code, has been filed. The exception found in section 1 of article 3, names two classes of laws that are not subject to the referendum: First, such laws as are declared by the act itself to be necessary for

the immediate preservation of the public peace, health, or safety
of the state; and, second, such laws as are necessary for the
support of the government and its existing public institutions.  A
law may be necessary for the preservation of the public peace,
health, or safety, and still be subject to the referendum, unless the
Legislature declares it necessary for the immediate preservation
of the public peace, health, or safety; and it will go into effect
in accordance with the provisions of section 5111, Rev. Code
1919, but in the meantime it will not be subject to the referend-
um.    If the Legislature declares such a law necessary for the
immediate preservation of the public peace, health, or safety, and
attaches to such law an emergency clause as provided for in sec-
tion 22, art. 3, of the Constitution, then such law will go into
effect immediately or at such time thereafter as the Legislature
may fix, and in the meantime it will not be subject to the refer-
endum.    But a law that is necessary for the support of the state
government or its existing institutions is not subject to the refer-
endum in any event, and will go into effect in accordance with
the provisions of section 5111, Rev. Code 1919, unless the Leg-
islature declares the existence of an emergency, under section 22,
art. 3, Const., in which case such law will go into effect immedi-
ately or at such time as the Legislature may fix.    The opera-
tion of such laws cannot be suspended nor postponed by the
filing of a referendum petition.  State v. Clausen, 85 Wash. 260,
148 Pac. 28, Ann. Cas. 1916B, 810.

Whether a law is in its substance and effect a law for the
preservation of the public, peace, health, or safety, or for the
support of the state government and its existing public institu-
tions, is a question for the courts to decide, subject to the rule
that in case of doubt the legislative will should be given effect.

Whether an emergency exists which makes it necessary that
a law belonging to either one of these two classes should go into
immediate effect is a question for the Legislature, to be conclus-
ively evidenced by a declaration of emergency under the provi-
sions of section 22, art. 3, of the Constitution.

Whether the necessity is immediate, where a law is for the
preservation of the public peace, health, or safety, even though
the emergency clause be not attached, is a question for the Legis-
lature, to conclusively evidenced by a declaration in appropriate
language.

[6]  In State v. Bacon, 14 S. D. 394, 85 N. W. 605, this court held that the declaration of an emergency by the Legislature was conclusive as to any law without regard to the referendum clause in section 1.  This was on the theory that section 22 was still in force, that the Legislature could put any law into immediate effect by attaching an emergency clause thereto, and that a law could not be referred after it had gone into effect.  But this case was overruled in State v. Whisman, supra, where it was held that the attachment of an emergency clause would not put a law into immediate effect, unless such law came within one of the classes that are excepted from the referendum clause.  The effect of the referendum clause therefore was to amend or modify section 22 of article 3 by implication, so that it is only such laws as are not subject to the referendum clause that can be put into immediate effect by the declaration of an emergency.

[7]  It is not contended by respondents, and could not be seriously contended, that the support of the state government and its existing public institutions depended upon chapter 170, Laws of 1919, going into effect immediately upon its passage and approval.  If merely attaching the emergency clause would put any law into immediate operation and prevent a vote thereon under the referendum clause, then the Legislature could attach the emergency clause to any law that could secure a two-thirds vote of the Legislature, and in that way practically nullify the referendum clause in the Constitution.  For the Legislature to say that the "support of the state government and its existing institutions" depended upon the immediate operation of chapter 170, Laws 1919, was a mere absurdity.  Chapter 170, Laws of 1919, did not go into effect until the 1st day of July, 1919.

[8]  We hold that the attempt to organize the Erwin consolidated school district was not authorized by any law then in force, and that the attempted organization was wholly futil.

The order appealed from is reversed.

WHITING, J. (dissenting.) I concur fully in what is said in the foregoing opinion in relation to the construction given sections 1 and 22, art. 3, of our Constitution; but I dissent from the result reached by my colleagues.  The grounds for my dissent will be found stated in my dissenting opinion upon the rehearing in Isaacson v. Parker, 178 N. W. 140.