#23852, #23859-aff in pt, rev in pt & rem-JKK

**2006 SD 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CARL TOBEN,                                        Plaintiff and Appellant,

    v.

DOUGLAS & CHARLENE JESKE,                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ARTHUR L. RUSCH
Judge

\* \* \* \*

KELLY STRICHERZ of
Kettering Law Office                    Attorney for plaintiff
Yankton, South Dakota                   and appellant.

ACIE W. MATTHEWS                        Attorney for defendants
Sioux Falls, South Dakota               and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 24, 2006

OPINION FILED **06/28/06**

KONENKAMP, Justice

[¶1.] Plaintiff commenced this personal injury action three years after he was injured by a horse owned by his employers. Although the circuit court denied a motion to dismiss on the statute of limitations defense, it granted summary judgment on the ground that the Equine Activities Act exempted the employer defendants from liability. On appeal, plaintiff asserts that the court erred in granting summary judgment because genuine issues of material fact remain on whether an exception to the Act applies. By notice of review, defendants contend that the court erred when it held that the suit was timely. We affirm on the timeliness issue and reverse the grant of summary judgment.

## Background

[¶2.] Defendants Douglas and Charlene Jeske own land near Utica, South Dakota, where they keep a stable and corral for their riding horses. At age eighteen, plaintiff, Carl Toben, was employed by the Jeskes as a farmhand. In Toben's words, he did "everything from riding horses to loading feed, delivering feed, fencing, feeding horses, working cattle." To train and condition the horses, Toben was expected to ride them as one of his job duties. Douglas Jeske told Toben "to make sure he always had a rein in his hand when mounting horses." Yet the Jeskes would not pay Toben for his riding time. According to Toben,

> Doug and Char didn't think I was experienced enough to, or didn't think I was good enough, or whatever, to be doing that, to be paid to be doing that. They thought I needed more experience. Well, they told me to quit writing it down on your time card and we'll just give you a saddle for doing it. I never did receive that saddle.

Nonetheless, according to Toben, the Jeskes "want[ed] their horses rode." Indeed, Toben wanted to ride them, for he was interested in gaining experience in breaking horses. He had ridden other horses before without being injured. The horses Toben had broken earlier, however, were "green broke," meaning that they had already been in the process of learning to accept a saddle, bridle, and rider.

[¶3.] On July 2, 2001, the Jeskes asked Toben to ride Blaze. They had purchased this "unbroke" colt a year earlier, when it was three months old. According to Douglas Jeske, Blaze "was in the process of being broke so that it could be used for riding purposes and demonstration purposes." Toben had ridden him perhaps a dozen times before. When he mounted Blaze this time, however, the horse immediately bucked him off. Toben fell to the ground and was unable to get up. An ambulance was called. As a result of his injuries, Toben incurred substantial medical bills and could not work for an extended time. Three years later, on July 2, 2004, Toben commenced suit against the Jeskes.

[¶4.] In response to the lawsuit, the Jeskes moved to dismiss on the ground that the statute of limitations had expired. Using the day of injury as the beginning date, the Jeskes argued that the limitations period expired on July 1, 2004. The circuit court denied the Jeskes' motion. Discovery proceeded, and the Jeskes moved for summary judgment. They asserted that the Equine Activities Act in SDCL 42-11-2 exempted them from liability. Toben invoked the exceptions under SDCL 42-11-3.

[¶5.] In granting summary judgment for the Jeskes, the circuit court concluded that none of the exceptions in SDCL 42-11-3 applied. Toben appeals,

and, by notice of review, the Jeskes also appeal contending that the circuit court erred in finding that the suit was not barred by the statute of limitations.

## Analysis and Decision

### 1. Statute of Limitations

[¶6.]    We address the Jeskes' notice of review first. They contend that the statute of limitations expired on Toben's claim. Toben was injured on July 2, 2001. Under SDCL 15-2-14(3), he had three years to bring his personal injury action. The Jeskes cite SDCL 2-14-2(36), which states that a "year" means "a calendar year." For the term "calendar year" they cite a legal dictionary that defines a "year" as "[t]welve calendar months beginning January 1 and ending December 31." *See* Black's Law Dictionary (8th ed 2004). From this, they reason that if Toben had three *years* under the Jeskes' definition of a year, the statute of limitations would include the first day, and Toben was required to commence his action by July 1, 2004. The Jeskes were served on July 2, 2004.

[¶7.]    The calculation of time for commencement of civil actions in South Dakota is controlled by SDCL 15-6-6(a). That statute provides in part:

> In computing any period of time prescribed or allowed by this chapter, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.

SDCL 15-6-6(a). Despite the clear import of this statute, the Jeskes insist that the first day should be included, and they direct us to precedent from other

jurisdictions.  They further assert that we should not interpret SDCL 15-6-6(a) to apply in this case because it would "contravene SDCL 15-2-14 and SDCL 2-14-1."

[¶8.]          We conclude that the Jeskes' argument is without merit.  First, out-of-state cases have no bearing on our procedures because those decisions interpret dissimilar statutes.  Second, SDCL 15-6-6(a) unquestionably applies to SDCL 15-2-14(3).  Our rules in SDCL Title 15 govern the procedures for all civil suits in the circuit courts of South Dakota.  *See* SDCL 15-6-1.  SDCL 15-2-14(3) requires a plaintiff to commence an action within three years, and SDCL 15-6-6(a) prescribes how those three years are to be calculated.  Toben was injured on July 2, 2001.  The three years began on July 3, 2001, and ended on July 2, 2004.  Because Toben commenced his action on July 2, 2004, within three years, the circuit court did not err when it held that Toben's claim was timely.

## 2.  Liability Under the Equine Activities Act

[¶9.]          We next examine Toben's issue on whether summary judgment was improper.  "When reviewing a grant of summary judgment, we decide only whether there were genuine issues of material fact and whether the law was correctly applied."  Heib v. Lehrkamp, 2005 SD 98, ¶19, 704 NW2d 875, 882 (citing SDCL 15-6-56(c); Keystone Plaza Condominiums Ass'n v. Eastep, 2004 SD 28, ¶8, 676 NW2d 842, 846).  We view the evidence in a light most favorable to the nonmoving party.  Wilson v. Great Northern Railway Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968).  Both sides concede that the Equine Activities Act (SDCL 42-11-2) applies in this

case.[1] Toben asserts that the exception under SDCL 42-11-3(1) subjects the Jeskes to potential liability because he "was inexperienced with unbroken horses, that the particular horse was unbroken, and that [the Jeskes] knew of his inexperience and that his representations to [the Jeskes] were that of inexperience."

[¶10.] For the circuit court's consideration, the parties offered Toben's affidavit and deposition testimony, an affidavit from equine expert Mary Griffith, and an affidavit from Douglas Jeske. The record on appeal, however, does not contain Toben's affidavit. Instead, the affidavit is in the appendix to Toben's reply brief to this Court. Accordingly, the Jeskes claim that we cannot consider the assertions made by Toben in this affidavit. In response, Toben argues that because opposing counsel and the circuit court transcript both refer to his affidavit, "it is part of the record in this case and should be considered."

[¶11.] It is well settled that "[w]hen reviewing a grant of summary judgment, we are not bound by the trial court's factual findings, but rather must undertake an independent review of the record." Spenner v. City of Sioux Falls, 1998 SD 56, ¶7, 580 NW2d 606, 609 (citing Walz v. Fireman's Fund Ins. Co., 1996 SD 135, ¶6, 556 NW2d 68, 70). It is immaterial that the court referred to the information contained in Toben's affidavit or that the Jeskes acknowledge the affidavit in their brief. Our

---

1. That statute provides:

   No equine activity sponsor, equine professional, doctor of veterinary medicine, or any other person, is liable for an injury to or the death of a participant resulting from the inherent risks of equine activities.

   SDCL 42-11-2.

review is restricted to facts contained within the settled record. *Id.* ¶9 (citing

Nauman v. Nauman, 336 NW2d 662, 664 (SD 1983)). Moreover, "all parties are

obligated to see that the settled record contains all matters necessary for the

disposition of the issues raised on appeal, [and] the ultimate responsibility for

presenting an adequate record on appeal falls upon the appellant." Caneva v.

Miners & Merchants Bank, 335 NW2d 339, 342 (SD 1983). Because Toben's

affidavit is not part of the settled record, we cannot consider it on appeal.

[¶12.] The essential question here is whether the exception in SDCL 42-11-

3(1) applies.[2] This exception states in part:

> Nothing in this chapter prevents or limits the liability of an
> equine activity sponsor, an equine professional, or any other
> person if the equine activity sponsor, equine professional, or
> other person:
>
>    (1) . . . provides the animal and fails to make reasonable
> and prudent efforts to determine the ability of the participant to
> engage safely in the equine activity and determine the ability of
> the participant to safely manage the particular animal based on
> the participant's representations of his ability[.]

SDCL 42-11-3(1). Toben argues that the Jeskes failed to make reasonable and

prudent efforts to determine his ability "to engage safely in the breaking of Blaze"

and failed to determine his ability to safely manage Blaze considering Toben's

representations of his ability.

[¶13.] In granting the Jeskes' motion for summary judgment, the circuit court

ruled that Toben "was an experienced horse person," that he "had ridden the horse

---

2.    In the circuit court, Toben also invoked the exception in SDCL 42-11-3(3)
      (commission of acts or omissions constituting willful or wanton disregard for
      safety). He has not asserted that issue here, thus we deem it abandoned.

in question," and that he "had extensive experience in the horse breaking process, having ridden horses of other persons[.]" The court held that the Jeskes "made reasonable and prudent efforts to determine the ability of [Toben] to engage safely in the equine activity and had determined the ability of [Toben] to safely manage the animal in question[.]"

[¶14.]	While it is undisputed that Toben rode Blaze and other horses in the past, there are material issues of fact in dispute on the overall level of experience Toben had with horses, and specifically on his range of experience in riding unbroken horses. Whether Blaze was broken, unbroken, or "green broke" when Toben was injured cannot be definitively established in the record. Indeed, the determination of this fact bears on whether the Jeskes were reasonable and prudent in concluding that Toben was able to ride Blaze. On this point, we think it significant that Charlene Jeske had earlier attempted to ride Blaze herself and, according to Toben, she was "face planted" on the ground when the horse bucked her off. Moreover, the Jeskes indicated that Toben had expressed an interest in the process of breaking horses and that they referred him to other people who might provide him with additional experience. These facts all bear on the Jeskes' knowledge of the nature of Toben's experience and the disposition of their horse.

[¶15.]	We also believe it significant that although the Jeskes considered it part of Toben's duties to ride their horses, they would not pay him for his time spent riding. Toben's testimony on their reason for not paying him, that the Jeskes did not think he was experienced enough, raises a genuine dispute on whether the Jeskes made reasonable and prudent efforts to determine Toben's ability to ride

Blaze safely. Additionally, it is reasonable to infer that when the Jeskes provided Toben instructions regarding the horses, i.e., that he should always use the reins when mounting, this also supports the notion that they considered him inexperienced.

[¶16.] That Toben had ridden Blaze in the past without incident, or that he had experience riding other peoples' horses is insufficient to sustain the motion for summary judgment in this case. Such facts do not make it undisputed that the Jeskes made reasonable and prudent efforts to determine Toben's ability to ride Blaze as required by SDCL 42-11-3(1). "'[S]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham, frivolous or unsubstantiated; summary judgment is an extreme remedy and should be awarded only when the truth is clear[;] and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant.'" *Keystone Plaza Condominiums Ass'n*, 2004 SD 28, ¶15, 676 NW2d at 847 (citations omitted) (alterations in original). After reviewing the evidence and its reasonable inferences, we conclude that summary judgment should not have been granted.

[¶17.] Affirmed in part, reversed in part and remanded.

[¶18.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.